## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **HILL & MAC GUNWORKS, LLC,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION FILE NO.** |
| **TRUE POSITION, INC.** | _____ |
| **Defendant.** | |

## COMPLAINT

COMES NOW Hill & Mac Gunworks, LLC and hereby files this Complaint, respectfully showing the Court as follows:

### I.    PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff Hill & Mac Gunworks, LLC ("HMG") is a boutique firearms designer and manufacturer that also makes reactive steel targets and other firearm-related products.  The company is owned by Georgia natives and Georgia residents,

Hill Redwine and Everett "Mac" Steil.  Accordingly, HMG is a citizen of Georgia for purposes of diversity jurisdiction.

2.

Defendant True Position, Inc. ("TP") is a Utah corporation with its principal place of business located at 1010 W. Kershaw, Ogden, Utah 84401. TP is a Utah citizen for purposes of diversity jurisdiction, and is subject to the jurisdiction and venue of this Court.  TP may be served with a summons and copy of this Complaint on its registered agent, Christopher Woods, at 1010 W. Kershaw, Ogden, Utah 84401.

3.

There is diversity of citizenship between the parties within the meaning of 28 U.S.C. § 1332.  Moreover, the amount in controversy, without interest and costs, exceeds the sum or value ($75,000) required by 28 U.S.C. § 1332.  Accordingly, this Court may exercise subject matter jurisdiction over this action.

4.

Venue is appropriate in this District and Division pursuant to 28 U.S.C. § 1391 and Local Rule 3.1 (N.D. Ga).  Moreover, the parties entered into an "Exclusive License Agreement" (the "Agreement") dated January 22, 2019 wherein they agreed that "[a]ny action or proceeding relating to a claim or controversy at law or equity arising from this Agreement may be brought in a federal or state court located in

2

Georgia, in which case each Party irrevocably submits to the exclusive jurisdiction and venue of any such court in any such action or proceeding."  A true and accurate copy of the Agreement is attached hereto as Exhibit A.

5.

Any and all conditions precedent for the filing of this action and assertion of the claims set forth herein have occurred or have been satisfied.

II.   <strong><u>STATEMENT OF FACTS</u></strong>

6.

This litigation arises out of the Agreement to manufacture a modernized replica of a historically significant WWII-era firearm known generally as the StG 44 (the "Firearm"), which was creatively engineered by Mac Steil of HMG to be compatible with both modern and original ammunition.  As such, it has acquired immense appeal among firearm enthusiasts since it first debuted in January 2016 at the Shooting, Hunting, Outdoor Trade (SHOT) Show, the largest annual trade show in the firearms industry.  To date, HMG has been the only company to successfully develop and market a modernized operational version of the Firearm and owns all relevant intellectual property related thereto.

7.

In order to meet growing customer demand for the Firearm, HMG entered into the Agreement with TP, an Ogden, Utah based provider of precision machining, to scale up manufacturing and production of the Firearm.

8.

HMG was first introduced to TP in mid-2018 through mutual contacts in the firearms industry, which identified TP as having experience in firearms manufacturing. Discussions and in-person visits between HMG and TP were then conducted through the end of 2018 and early 2019, ultimately resulting in the Agreement being executed by the parties on January 22, 2019.

9.

From the outset, the parties agreed that TP would bear the cost of manufacturing the Firearm, which was initially offered for sale at a retail price of $1,799. The parties also agreed that they would share the Net Sales equally. The idea was simple – HMG had developed a unique and highly popular product, TP represented that it could provide the means to bring that product to market, and both parties expected to realize a profit from their mutual efforts.

10.

Over the next 12 months, however, it became evident that TP had grossly overestimated its abilities, telling HMG in a January 14, 2020 e-mail that TP "has

4

incurred Research and Development costs that were unforeseen during discussions in bringing the firearm to market." In that e-mail, TP also demanded radical changes to the Agreement, including significant monetary payments from HMG, before HMG could produce the Firearm. TP made these demands at a time when hundreds of nearly complete Firearms were in TP's possession and could have been finished, and readily provided to customers, including those who had placed pre-orders for Firearms. Yet, rather than achieve a significant threshold in commercialization of the Firearm that would have generated revenue for both parties, TP instead chose to effectively hold the Firearm products hostage in an attempt to exert pressure on HMG.

11.

Section 3.1 of the Agreement provides to TP an exclusive, royalty-bearing license from HMG to manufacture the Firearm and to distribute those Firearms to HMG only.

12.

Section 4.2 of the Agreement states that TP "shall have the sole responsibility and obligation for the cost of manufacturing, labeling, storing, packaging, and distributing [the Firearm] under the Agreement."

13.

Section 5.1 of the Agreement sets forth that TP is to be paid "a royalty of fifty percent (50%) of all Net Sales" made by HMG.

14.

Section 4.9 of the Agreement, entitled "Technology Transfer," makes clear HMG's principle obligation:

> HMG shall provide reasonable assistance to transfer to True Position the Licensed Know-How and other technical expertise necessary for the manufacture of Licensed Products. During the first six (6) months after the Effective Date, HMG will provide reasonable advice and training to True Position, including making qualified personnel of HMG available, at no additional cost to True Position (other than reimbursement of reasonable travel-related expenses) in order to assist True Position in its understanding and use of the Licensed Know-How. True Position will request assistance in such a way as to minimize disruption to the operations of HMG and the day-to-day responsibilities and activities of HMG personnel, including by (i) accepting assistance by telephone where practical, (ii) giving reasonable notice when in person assistance is required, and minimizing the in-person trips to occasional trips of short duration during regular business hours, and (iii) devoting a sufficient number of True Position personnel, with the requisite expertise, to the technology transfer and manufacturing activities contemplated by this Agreement.

15.

Prior to or concurrently with entering into the Agreement, TP made several representations. These representations include that TP personnel had reviewed the specifications for the Firearm and, given appropriate machines, materials, tools, and

training, could manufacture the Firearm.  TP impliedly represented and assumed the

obligation implied by law that it would undertake commercially reasonable efforts

and diligence to manufacture the Firearm.

16.

Since HMG entered into the Agreement with TP, HMG has made every effort

to provide TP with whatever resources and/or support TP requested or which made

itself  apparent  to  HMG,  including  extensive  technical  support,  in-person

demonstrations at TP's facility, and training.  Indeed, Mac Steil, one of the owners

of HMG, visited TP on three separate occasions (along with other employees of

HMG)  and  transferred  "Licensed  Know-How"  and  provided  in-person  technical

assistance on a total of 18 days beginning in the fall of 2018 through December of

2019,  including  nine  days  during  July  of  2019  and  another  four  days  during

December of 2019.  Further, HMG even arranged for a representative of another

manufacturer to visit TP in support of this effort.

17.

In reasonable reliance on the Agreement and the representations of TP, HMG

continued  to  accept  "pre-orders"  for  Firearms  from  customers,  ultimately  "pre-

selling" 671 Firearms.  As a result, HMG received more than $1.2 million in funds

from customers for the purchase of Firearms prior to the actual manufacture of the

Firearms.

111190759.v1

18.

On or about October 11, 2018, HMG issued a purchase order (PO# 10451) to TP ordering 500 Firearms from TP. But TP never manufactured the 500 Firearms ordered by HMG.

19.

Section 4.6 of the Agreement states, "For quality review, True Position shall send to HMG a representative sample of a Licensed Product within two months after the Effective Date and subsequently thereafter during the first half of each calendar year." HMG did not receive any samples from TP within two months of the Effective Date (March 22, 2019). As of the date of the filing of this Complaint, HMG has not received any completed Firearms from TP, and has only received parts from TP that have permitted the assembly of four Firearms.

20.

It is critical that HMG be able to provide Firearms to meet customer demand, particularly, the present and immediate demand represented by customers of HMG who have pre-ordered Firearms.

21.

But instead of manufacturing the Firearms ordered by HMG in accordance with the Agreement, on or about January 13, 2020, the President of TP, Christopher

8

Woods, demanded several "contract changes" during a conversation with Mac Steil of HMG.

22.

TP's demanded contract changes represent a "Dispute" between TP and HMG as that term is utilized in the Agreement.

23.

As such, the January 13, 2020 conversation between Christopher Woods (President of TP) and Mac Steil (Co-Owner of HMG) began a 90-day time period for Dispute Resolution pursuant to Section 8.3 of the Agreement.

24.

On January 14, 2020, TP provided to HMG a written summary of its demanded "contract changes."   A true and accurate copy of these demanded "contract changes" are attached hereto as Exhibit B.  In summary, these included: (1) several changes that would shift to HMG the burden of the cost of manufacturing, obtaining parts, inventory, recoupment of labor costs, and associated market price variability, from TP despite the plain language of Section 4.2 stating otherwise; (2) claims by TP that it incurred unspecified research and development costs and that it wanted to be paid, separate and apart from the terms of the Agreement, for certain Firearms it had produced, whereby TP intended to use such payments to offset other amounts it owed to HMG for the provision of certain machines, materials, parts, and

9

tools by HMG necessary for TP's production of the Firearms; (3) changes to the royalty payments timeline to make them due on a Net 30 basis instead of quarterly; (4) the assertion that HMG-provided materials need "changes," which is untrue, and, instead, is a result of TP's incompetence, thereby creating an issue that does not exist; (5) the requirement that HMG pay for mistakes in manufacturing made by TP and simultaneously warranty TP's work; and (6) perhaps most tellingly, TP's demand that if HMG somehow "defaults," then TP would "assume all ownership of patents and licensing agreements of [the Firearm] and TP will be the sole owner of them."

25.

Subsequently, over the ensuing weeks principles of the parties had several conversations and exchanges of correspondence in an attempt to work through the foregoing issues.

26.

During the course of discussions between TP and HMG regarding TP's demanded contract changes, TP informed HMG that it was fully capable of manufacturing and providing the 500 Firearms previously ordered by HMG. Nonetheless, TP has failed and refused to do so.

111190759.v1

27.

On February 10, 2020, HMG notified TP that the 90-day time period for Dispute Resolution pursuant to Section 8.3 of the Agreement had begun to run as of January 13, 2020.

28.

HMG further notified TP that if TP did not provide the requested inventory of completed firearms to HMG, suitable for commercial sale, by the end of the 90-day period (April 12, 2020), the dispute would remain unresolved and the Agreement would be terminable pursuant to Articles VIII and/or IX of the Agreement.

29.

On February 26, 2020, after further discussion between the parties, HMG sent a proposed Termination Agreement to TP in an effort to reach an amicable parting of the ways whereby HMG could retrieve machines, materials, parts, and tools belonging to and/or supplied by HMG to TP and, in exchange, HMG would purchase any and all completed Firearms and usable Firearm components in the possession of TP.

30.

Despite HMG's best efforts, it was unable to negotiate a resolution with TP and, at HMG's suggestion, the parties agreed to mediate their dispute. Although HMG proposed and was ready to immediately enter into mediation in mid-March

2020, TP insisted on waiting until May 2020 to begin. Hence, the mediation started on May 5, 2020 and ended on May 14, 2020.

31.

On May 4, 2020, the day before the mediation began, TP's counsel sent HMG's counsel a link to a publicly available 24-minute video posted by TP on www.vimeo.com, and stated that the "video demonstrates some of the problems we are trying to describe and should be helpful in understanding the case." In this video, Christopher Woods (President of TP) and another TP employee each provide a detailed description of critical and confidential features of the Firearm design as well as details of confidential communications and interactions that occurred between the parties prior to and during the term of the Agreement.

32.

By making this video publicly available and without HMG's consent, TP expressly breached the confidentiality provisions of the Agreement, including Section 7.5 which states, "True Position shall not issue any press release or public statement regarding this Agreement, and shall not use HMG's name, insignia or trademarks, or any adaptation of them, or the name of any of HMG's inventors without the prior written approval of HMG."

33.

The mediation failed to resolve the issues between the parties.

34.

On May 26, 2020, pursuant to Section 8.3 of the Agreement, HMG provided TP with formal a "Notice of Termination."  This Notice was deemed given on May 26, 2020 pursuant to the express terms of Section 10.9 of the Agreement because the Notice was properly addressed and provided by both e-mail and certified mail, return receipt requested, that same day. A true and accurate copy of the Notice of Termination is attached hereto as Exhibit C.

35.

Pursuant to the express terms of Section 8.3 of the Agreement, the Agreement terminated ten (10) days later on June 5, 2020.

36.

As of the date of the filing of this Complaint, TP continues to fail and refuse to manufacture the Firearm as agreed in the Agreement.

## III.    CAUSES OF ACTION

### COUNT I - BREACH OF CONTRACT – FAILURE TO MANUFACTURE FIREARMS

37.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

38.

HMG requested that TP manufacture 500 Firearms.

13

39.

The Agreement provides to TP an exclusive, royalty-bearing license from HMG to manufacture the Firearm and to provide Firearms to HMG only. Agreement, Section 3.1.

40.

In exchange for manufacturing, labeling, storing, packaging, and distributing Firearms to HMG, TP was to be paid "a royalty of fifty percent (50%) of all Net Sales" made by HMG.  Agreement, Sections 4.2 & 5.1.

41.

TP has failed and refused to produce the Firearms as set forth in the Agreement and as requested by HMG and has further breached its obligation to undertake in a commercially reasonable manner to manufacture the Firearm.

42.

HMG has incurred substantial damages as a result of TP's failure and refusal to produce the Firearms.

## COUNT II – BREACH OF CONTRACT – BREACH OF CONFIDENTIALITY

43.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

44.

Section 7.5 of the Agreement states, "Promotional Disclosures. True Position shall not issue any press release or public statement regarding this Agreement, and shall not use HMG's name, insignia or trademarks, or any adaptation of them, or the name of any of HMG's inventors without the prior written approval of HMG."

45.

On May 4, 2020, TP posted a publicly available video on the website www.vimeo.com without HMG's consent.  In this 24-minute video, Christopher Woods (President of TP) and another TP employee each provide a detailed description of critical and confidential features of the Firearm design as well as details and characterizations of communications and interactions that occurred between the parties prior to and during the term of the Agreement.

46.

By making this video publicly available, TP expressly breached the confidentiality provisions of the Agreement.

47.

HMG has incurred damages as a result of TP's breach of the Agreement.

**COUNT III – PROMISSORY ESTOPPEL**

48.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

111190759.v1

49.

As set forth herein, TP represented and/or promised that it could produce Firearms in quantities sufficient to meet HMG's customers' demands.

50.

TP should have reasonably expected HMG to rely on such promise, take action based on such promise, and forbear from other action based on such promise.

51.

HMG did, in fact, rely, take action, and forbear from other action based on such promise to its detriment.

52.

An injustice can be avoided only by compensation for the harm caused by HMG's detrimental reliance.

## COUNT IV - ALTERNATIVE CLAIM FOR QUANTUM MERUIT/VALEBANT AND/OR UNJUST ENRICHMENT

53.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

54.

HMG provided machines, materials, parts, tools, and training at the request of TP.

16

55.

The machines, materials, parts, tools, and training provided by HMG to TP are valuable to TP.

56.

TP accepted the machines, materials, parts, tools, and training provided by HMG, and has been enriched to the extent it has failed to compensate HMG.

57.

TP is obligated in quantum meruit/valebant to pay HMG the reasonable value of the machines, materials, parts, tools, and training provided by HMG. Alternatively, TP is obligated to pay HMG the reasonable value of the machines, materials, parts, tools, and training to prevent it from being unjustly enriched.

58.

The reasonable value of the machines, materials, parts, tools, and training provided to TP is not less than $523,991.20.

## COUNT V - BREACH OF IMPLIED PROMISE NOT TO INTERFERE WITH PERFORMANCE OF CONTRACT

59.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

60.

TP had an implied duty not to hinder, delay, or interfere with the conduct and performance of contracts between HMG and its customers.

17

61.

Nonetheless, through its failure and refusal to produce the Firearms: (a) in contravention of the Agreement, and (b) counter to its own representations that it was capable of producing the Firearms; and, (c) moreover, by its efforts to hold HMG's machines, materials, and tools "hostage" and thereby force an alteration to the terms of the Agreement, TP has delayed and impeded HMG from performing on its agreements with its customers to deliver pre-ordered Firearms.

62.

Accordingly, HMG has incurred compensatory damages directly and proximately as result of TP's breach of its implied duty, in an amount to be proven at trial, but not less than $250,000 as of the date of filing.

**COUNT VI – NEGLIGENT MISREPRESENTATION**

63.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

64.

TP negligently represented its ability to perform and produce Firearms.

65.

TP's negligent representation induced HMG to ship machines, materials, parts, and tools to TP, incur hundreds of man-hours in labor in so shipping machines,

materials, parts, and tools to TP, and incur freight and shipping costs with third parties related thereto.

66.

TP's negligent representation further induced HMG to incur the expense associated with traveling and staying in Utah in order to provide TP with training regarding the operation of the machines and tools and the manufacture of the Firearm and to incur hundreds of man-hours in labor in so doing.

67.

HMG reasonably relied upon the negligent representations of TP.

68.

HMG incurred damages directly and proximately resulting from TP's negligent representations, the amount of which HMG is entitled to recover from TP.

69.

Accordingly, HMG has incurred compensatory damages directly and proximately as result of the actions of TP, in an amount to be proven at trial, but not less than $950,000 as of the date of filing.

## COUNT VII – CONVERSION

70.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

19

71.

By and through the conduct set out above, TP has converted to its own use property belonging to HMG.

72.

HMG is entitled to immediate possession of the machines, materials, parts, and tools it has provided to TP.

73.

HMG has previously demanded return of the machines, materials, parts, and tools it provided to TP and hereby reiterates its demand for their return.

74.

TP has steadfastly refused to return the machines, materials, parts, and tools provided to it by HMG.

75.

Accordingly, HMG has incurred compensatory damages directly and proximately as a result of the actions of TP, in an amount to be proven at trial, but not less than $493,991.20 as of the date of filing.

**COUNT VIII – INJUNCTIVE RELIEF**

76.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

77.

TP has failed and refused, and continues to fail and refuse, to manufacture, label, store, package, and distribute the Firearm to HMG as required by the Agreement despite HMG's repeated demands that it do so.

78.

TP has failed and refused, and continues to fail and refuse, to return HMG's machines, materials, parts, and tools to HMG despite HMG's repeated demands that it do so.

79.

HMG will suffer immediate and irreparable harm if TP is not ordered to immediately return all of HMG's machines, materials, parts, and tools to HMG.

80.

HMG does not have an adequate remedy at law, and the immediate and irreparable harm that HMG will suffer in the absence of an injunction cannot be compensated by damages.

81.

The actions sought to be restrained are actionable, HMG has a clear right to relief, and its claims are likely to succeed on the merits.

111190759.v1

82.

Greater harm will occur to HMG by refusing the injunction than would result to TP if the injunction is granted.

83.

The issuance of the injunction will restore the parties to their status as it existed prior to the wrongful conduct of TP asserted herein.

## COUNT IX – PUNITIVE DAMAGES

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

84.

The actions described hereinabove taken by TP show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to their consequences so as to entitle HMG to punitive damages totaling at least $1,000,000 against TP in accordance with O.C.G.A. § 51-12-5.1.

85.

TP acted with the specific intent to cause harm to HMG.  Accordingly, there should be no limitation regarding the amount which may be awarded as punitive damages against TP and in favor of HMG, pursuant to O.C.G.A. § 51-12-5.1(f).

## COUNT X – ATTORNEY'S FEES AND COSTS

86.

HMG incorporates each foregoing paragraph as if set forth herein verbatim.

87.

By intentionally failing to satisfy its obligations under the Agreement and in the face of the misrepresentations that induced entry into the Agreement by HMG and induced HMG to provide machines, materials, parts, tools, and training to TP, TP has acted in bad faith, been stubbornly litigious, and has caused HMG unnecessary trouble and expense.

88.

HMG is entitled to recover its reasonable expenses of litigation, including attorney's fees pursuant to O.C.G.A. § 13-6-11.

**WHEREFORE**, Hill & Mac Gunworks, LLC requests an order:

1. Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for breach of contract (failure to manufacture Firearms and/or violation of confidentiality) in the amount of $2,000,000, plus pre- and post-judgment interest as allowed by law;

2. Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for Promissory Estoppel in the amount of $950,000, plus pre- and post-judgment interest as allowed by law;

111190759.v1

3.  Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for Quantum meruit/valebant and/or unjust enrichment in the amount of $523,991.20, plus pre- and post-judgment interest as allowed by law;

4.  Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for breach of implied promise not to interfere with performance of contract in the amount of $250,000, plus pre- and post-judgment interest as allowed by law;

5.  Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for negligent misrepresentation in the amount of $950,000 plus pre- and post-judgment interest as allowed by law;

6.  Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for conversion in the amount of $493,991.20, plus pre- and post-judgment interest as allowed by law;

7.  Granting the injunctive relief requested by Hill & Mac Gunworks, LLC;

8.  Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for punitive damages in an amount not less than one million dollars ($1,000,000.00);

9. Granting judgment in favor of Plaintiff Hill & Mac Gunworks, LLC and against True Position, Inc. for Plaintiff's reasonable attorney's fees and costs of litigation, pursuant to O.C.G.A. § 13-6-11; and

10. Such further and other relief as this Court deems just and proper.

This 8th day of June, 2020.

**FOX ROTHSCHILD LLP**
999 Peachtree Street
Suite 1500                          */s/ Steven D. Henry*
Atlanta, GA  30309                  Steven D. Henry
Telephone:  404-962-1000           Georgia Bar No. 348040
Facsimile:   404-962-1200
*shenry@foxrothschild.com*          *Attorneys for Plaintiff Hill & Mac*
                                    *Gunworks, LLC*

25