## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **HILL & MAC GUNWORKS, LLC,** | |
| **Plaintiff,** | **Civil No. 1:20-cv-02447-CC** |
| **v.** | |
| **TRUE POSITION, INC.** | |
| **Defendant.** | |

### ANSWER AND COUNTERCLAIM OF TRUE POSITION, INC.

COMES NOW Defendant True Position, Inc. and hereby timely Answers Plaintiff's Complaint as follows:

### FIRST DEFENSE

Plaintiff's claims for breach of contract are deficient as a matter of law due to mutual mistake. The parties believed at the time of contracting that Plaintiff had accurate and precise manufacturing plans and specifications for parts needed to assemble a safe, functional firearm with unskilled labor which was not true.

### SECOND DEFENSE

Plaintiff's claims are deficient as a matter of law due to Plaintiff's fraud, actual or constructive, where Plaintiff misrepresented to Defendant that Plaintiff had

1

accurate and precise manufacturing plans and specifications for a safe, functional firearm that could be assembled with unskilled labor.

## THIRD DEFENSE

Plaintiff's claims are deficient as a matter of law due to impossibility whereby Defendant was unable to manufacture and assemble parts with unskilled labor using Plaintiff's faulty manufacturing plans and specifications into a safe, functional firearm.

## FOURTH DEFENSE

Defendant asserts the affirmative defenses of estoppel, failure of consideration and illegality.

## FIFTH DEFENSE

For a Fifth Defense, Defendant Answers the numbered paragraphs of Plaintiff's Complaint, in the order propounded, as follows:

1.

Defendant can neither admit nor deny the allegations in paragraph 1 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

2.

Defendant admits the allegations in paragraph 2.

2

3.

Defendant admits the allegations in paragraph 3.

4.

Defendant admits that venue is appropriate and that the parties signed the Exclusive License Agreement dated January 22, 2019.   Defendant denies the remaining allegations in paragraph 4.

5.

Defendant can neither admit nor deny the allegations in paragraph 5 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

6.

Defendant admits that the parties had an agreement arising out of plans to assemble and market a firearm.   Defendant denies that Plaintiff successfully developed the firearm. Defendant can neither admit nor deny the remaining allegations in paragraph 6 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

7.

Defendant admits that the parties made various agreements concerning the manufacture of parts and assembly of the firearm. Defendant can neither admit nor deny the remaining allegations in paragraph 7 for lack of knowledge or information

sufficient to form a belief as to the truth thereof.

8.

Defendant admits the allegations in paragraph 8.

9.

Defendant denies the allegations in paragraph 9.   The agreements between the parties were made in reliance on Plaintiff's various misrepresentations including that it had completed the development of a working firearm and that working and replacement parts were readily available at specified costs.

10.

Defendant denies the allegations in paragraph 10.   Defendant was unable to manufacture necessary parts and to assemble a safe, working firearm using the plans and specifications provided by Plaintiff.   Defendant admits that it expended a significant amount of time and effort in trying to determine the causes of many deficiencies in Plaintiff's plans and specifications.   Defendant also admits that it notified Plaintiff that the original agreements needed to be revised in light of the changed circumstances.

11.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's

4

misrepresentations and lack of performance.

12.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

13.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

14.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

15.

Defendant admits that it represented that Defendant could manufacture certain parts and assemble a properly engineered firearm, and that it would make commercially reasonable efforts to do so.   Defendant denies that it approved or was otherwise responsible for the accuracy of Plaintiff's plans and specifications. Defendant denies the remaining allegations in paragraph 15.

5

16.

Defendant admits that Mac Steil visited its business premises.  Defendant denies that Plaintiff provided Defendant with necessary resources.  Plaintiff has attempted to coerce Defendant into developing and building a firearm, almost entirely at Defendant's expense, with products liability claims borne by Defendant, when Plaintiff misrepresented to Defendant that the firearm had previously been engineered and developed for mass production.

17.

Defendant denies that Plaintiff reasonably relied on Defendant when Plaintiff knew, or should have known, that the firearm had never been properly engineered and could not be assembled using the parts, plans and specifications supplied by Plaintiff. Defendant can neither admit nor deny the remaining allegations in paragraph 17 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

18.

Defendant admits that Plaintiff issued a "purchase order" for 500 firearms, but Defendant denies that Plaintiff intended to pay for the firearms. Moreover, Defendant was unable to assemble the firearm due to the deficiencies in Plaintiff's plans and specifications, and the defects in various parts supplied by others.

19.

Defendant admits that the language of the Agreement speaks for itself. Defendant was unable to assemble the firearm due to the deficiencies in Plaintiff's plans and specifications, and the defects in various parts supplied by others.

20.

Defendant can neither admit nor deny the allegations in paragraph 20 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

21.

Defendant admits that it notified Plaintiff that the original plans needed to be revised in light of the changed circumstances caused by Plaintiff's failure to provide adequate plans and specifications for the firearm which could not be assembled as anticipated.

22.

Defendant admits that there is a dispute between the parties.  Defendant denies that the Agreement is applicable.

23.

Defendant denies the allegations in paragraph 23.

24.

Defendant's copy of the Complaint does not contain Exhibit "B."   Defendant

admits that it sought a revised agreement with Plaintiff in light of Plaintiff's previous misrepresentations and inability to provide plans, specifications and parts for a firearm that was capable of being mass manufactured.    Defendant denies the remaining allegations in paragraph 24.

25.

Defendant admits that discussions occurred between the principals for the parties.

26.

Defendant denies the allegations in paragraph 26.

27.

Defendant admits that the referenced notice was provided but denies that the Agreement is enforceable.

28.

Defendant admits that the referenced notice was provided but denies that the Agreement is enforceable.

29.

Defendant admits that Plaintiff circulated a proposed Termination Agreement but denies the remaining allegations in paragraph 29.

30.

Defendant admits that the parties participated in mediation and that the disputes between the parties were not resolved. Defendant denies the remaining allegations in paragraph 30.

31.

Defendant admits that it prepared a video featuring Christopher Woods for use in mediation, and that the content of the video was shared with opposing counsel. Defendant denies the remaining allegations in paragraph 31.

32.

Defendant denies that the video was made publicly available.   Defendant denies the remaining allegations in paragraph 32.

33.

Defendant admits the allegations in paragraph 33.

34.

Defendant admits that the referenced notice was provided but denies that the Agreement is enforceable.

35.

Defendant admits that the Agreement is terminated.

36.

Defendant denies the allegations in paragraph 36. Defendant was unable to assemble the firearm due to Plaintiff's inability to provide plans, specifications and parts for a firearm that was capable of being mass manufactured.

COUNT I

37.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-36 above.

38.

Defendant admits that Plaintiff requested that Defendant manufacture 500 firearms but denies that Defendant could perform due to Plaintiff's inability to provide plans, specifications and parts for a firearm that was capable of being mass manufactured.

39.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

40.

Defendant admits that the language of the Agreement speaks for itself.

10

Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

41.

Defendant denies the allegations in paragraph 41.

42.

Defendant denies the allegations in paragraph 42.

## COUNT II

43.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-42 above.

44.

Defendant admits that the language of the Agreement speaks for itself. Defendant denies that the Agreement is enforceable due to Plaintiff's misrepresentations and lack of performance.

45.

Defendant admits that a video was posted and, due to oversight, was briefly lacking password protection.  Defendant does not believe that any third parties watched the video.   Defendant denies the remaining allegations in paragraph 45.

46.

Defendant denies the allegations in paragraph 46.

47.

Defendant denies the allegations in paragraph 47.

COUNT III

48.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-47 above.

49.

Defendant denies the allegations in paragraph 49.

50.

Defendant denies the allegations in paragraph 50.

51.

Defendant denies the allegations in paragraph 51.

52.

Defendant denies the allegations in paragraph 52.

COUNT IV

53.

Defendant restates and incorporates herein by reference its responses to

paragraphs 1-52 above.

54.

Defendant admits that Plaintiff provided machines, materials, parts, tools and training, but Defendant denies that Plaintiff performed its obligations under the agreements between the parties.   Defendant denies the remaining allegations in paragraph 54.

55.

Defendant denies the allegations in paragraph 55.

56.

Defendant denies the allegations in paragraph 56.

57.

Defendant denies the allegations in paragraph 57.

58.

Defendant denies the allegations in paragraph 58.

COUNT V

59.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-58 above.

60.

Defendant denies the allegations in paragraph 60.

61.

Defendant denies the allegations in paragraph 61.

62.

Defendant denies the allegations in paragraph 62.

## COUNT VI

63.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-62 above.

64.

Defendant denies the allegations in paragraph 64.

65.

Defendant denies the allegations in paragraph 65.

66.

Defendant denies the allegations in paragraph 66.

67.

Defendant denies the allegations in paragraph 67.

68.

Defendant denies the allegations in paragraph 68.

69.

Defendant denies the allegations in paragraph 69.

<u>COUNT VII</u>

70.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-69 above.

71.

Defendant denies the allegations in paragraph 71.

72.

Defendant denies the allegations in paragraph 72.

73.

Defendant denies the allegations in paragraph 73.

74.

Defendant denies the allegations in paragraph 74.

75.

Defendant denies the allegations in paragraph 75.

COUNT VIII

76.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-75 above.

77.

Defendant admits that it was unable to assemble the firearm due to Plaintiff's inability to provide adequate plans, specifications and parts for a firearm that was capable of being mass manufactured.   Defendant denies the remaining allegations in paragraph 77.

78.

Defendant denies the allegations in paragraph 78.

79.

Defendant denies the allegations in paragraph 79.

80.

Defendant denies the allegations in paragraph 80.

81.

Defendant denies the allegations in paragraph 81.

82.

Defendant denies the allegations in paragraph 82.

83.

Defendant denies the allegations in paragraph 83.

COUNT IX

(No # in Complaint)

Defendant restates and incorporates herein by reference its responses to paragraphs 1-83 above.

84.

Defendant denies the allegations in paragraph 84.

85.

Defendant denies the allegations in paragraph 85.

COUNT X

86.

Defendant restates and incorporates herein by reference its responses to paragraphs 1-85 above.

87.

Defendant denies the allegations in paragraph 87.

88.

Defendant denies the allegations in paragraph 88.

17

89.

Defendant denies all other allegations in Plaintiff's Complaint not specifically admitted herein.

WHEREFORE, Defendant prays that Plaintiff's Complaint be dismissed and that all costs be cast upon Plaintiff.

## **COUNTERCLAIM**

COMES NOW Defendant True Position, Inc. ("True Position") now moving as Counterclaimant, and hereby alleges the following Counterclaims against Hill & Mac Gunworks, LLC ("HMG") as follows:

1.

HMG is subject to the jurisdiction and venue of this Court by reason of having filed this lawsuit.

2.

True Position is in the business of metal manufacturing and has substantial experience with manufacturing firearms.

3.

In 2018, agents of HMG and True Position began discussing the possibility of True Position manufacturing certain parts and assembling a semi-automatic firearm promoted by HMG which is a replica of a World War II German rifle.

18

4.

Mac Steil is a member of HMG and acted as its agent.

5.

In August of 2018, when True Position employees went to Atlanta to meet with HMG employees, Mr. Steil represented that HMG had a finalized design and detailed parts specifications for the firearm that was patented and ready for mass manufacturing.

6.

In August of 2018, Mr. Steil represented that True Position's only obligation would be to manufacture a select number of previously designed parts and to assemble the firearm which included the use of parts purchased by HMG and supplied by third parties.

7.

In August of 2018, Mr. Steil represented that HMG had enough parts for 500 rifles except for the specific parts that True Position was to manufacture.   Mr. Steil stated that HMG had pre-sold 500 rifles.   Mr. Steil stated that HMG had expressions of interest from 2500 other potential purchasers, and that this number of rifles could be sold immediately.

8.

Mr. Steil traveled to True Position's facility in Ogden in approximately September of 2018.   Mr. Steil represented to agents of True Position including Chris Woods that HMG was at the point of forming a relationship with Brownells, a large firearms and ammunition supplier.   Mr. Steil represented that if HMG could commit to supply 300 of the rifles per month, Brownells would contract to buy them for several years.

9.

In September of 2018, Mr. Steil provided a price list and represented that he could obtain all of the parts on the price list for a total of $999.   One of the key items that True Position was to supply was the barrel for the rifle.   Mr. Steil represented that the barrels could be obtained at the price of $99 each.

10.

In reliance on the representations above by Mr. Steil, True Position and HMG signed the "Exclusive Licensing Agreement" (the "Agreement") on January 22, 2019.

11.

After signing the Agreement, True Position learned that all of Mr. Steil's representations above were false.

20

12.

Paragraph 4.2 of the Agreement requires True Position to "manufacture… Licensed Products that meet Specifications in accordance and compliance with good manufacturing practices prevailing in the industry."

13.

Paragraph 1.4 of the Agreement defines "Licensed Product" as "a modernized Sturmgewehr firearm that falls within the scope of at least one claim of" various listed patents identified in Appendix A to the Agreement.

14.

Paragraph 1.4 of the Agreement indicates that "Specifications means a detailed description of a Licensed Product suitable for commercial sale…."

15.

Paragraph 4.9 of the Agreement indicates that HMG was required to provide information and assistance "necessary for the manufacture of Licensed Products."

16.

Among other things, HMG promised under paragraphs 4.9 and 1.2 of the Agreement to provide "information and materials… concepts … designs … [and] drawings" "necessary for the manufacture of" the firearms.

17.

HMG completely failed in these obligations and has, to date, failed to provide the information and materials necessary to mass manufacture the firearm.

18.

After signing the Agreement, HMG sent True Position various parts, specifications and equipment.

19.

In reliance on HMG's representations that the parts were "suitable for commercial sale" and that the information "necessary for the manufacture" of the firearm had been provided, True Position tooled up and started manufacturing various parts in accordance with the design drawings provided.

20.

True Position also requested pricing from third parties to secure parts.   True Position then learned that the prices indicated by Mr. Steil were significantly understated. True Position discovered that it could not get the rifle barrels for $99. No vendor would even provide a quote for the barrel as designed.

21.

After True Position manufactured and purchased various parts, True Position attempted but was unable to assemble the parts into a completed firearm.   Even

22

when True Position performed time-consuming modifications of various parts, True Position was unable to assemble a firearm that it believed to be merchantable and safe for its intended use.

22.

HMG failed to provide properly engineered and manufacturing ready designs. The plans and part designs provided by HMG were incomplete and incapable of rapid assembly into a merchantable product.

23.

The Agreement between True Position and HMG did not contemplate the need for skilled assembly by a gunsmith with unique modifications to various parts during the course of each assembly.   Moreover, the lack of uniformity in the overall assembly caused concerns by True Position that the firearm would not be reliable, safe and merchantable.

24.

HMG asked True Position to redesign and correct at least eight defects in certain parts and assemblies.   True Position incurred substantial expense for such development work.   The Agreement did not contemplate that True Position would be required to perform extensive development work.   True Position is entitled to be compensated for the expense thereby incurred.

23

25.

In reliance on Mr. Stiel's representations and the Agreement, True Position purchased various parts from third parties to be used in the assembly of the firearm.

26.

In reliance on Mr. Stiel's representations and the Agreement, True Position manufactured various parts that were to be used in the assembly of the firearm.

27.

Due to HMG's repeated and continuing failure to perform its obligations under the Agreement, True Position sent notice under paragraph 9.3(c) of the Agreement that HMG had "defaulted in its obligation to provide all information necessary for the manufacture of the products under the Agreement and that HMG had 60 days to cure by providing first article plans or providing plans with which the products can be manufactured."

28.

Despite its receipt of True Position's notice, HMG failed to cure by performing its obligations under the Agreement.

29.

True Position has recently notified HMG to retrieve from True Position's premises certain machinery previously supplied by HMG and certain parts

purchased by HMG, failing which True Position will have such items stored at HMG's expense.   True Position asserts lien and other rights in parts that it purchased or modified in reliance on representations of HMG.

## COUNT I: BREACH OF CONTRACT

30.

True Position restates and incorporates herein by reference the allegations contained in paragraphs 1-29 above.

31.

There was a contract between the parties.

32.

True Position attempted in good faith to fulfill its obligations under the contract by purchasing parts, manufacturing parts, attempting to assemble the firearm and by working to correct various problems in HMG's design, plan and specifications.

33.

True Position produced various parts in conformity with the plans provided only to discover that the plans were incomplete, incorrect, or inaccurate.

34.

HMG breached its duty under the contract to provide accurate and precise manufacturing plans and specifications for a safe, functional firearm that could be assembled with unskilled labor.

35.

True Position has sustained damages as a natural and probable consequence of HMG's breach of contract.

36.

True Position is entitled to recover damages from HMG for its breach of contract including without limitation its costs to purchase parts, costs to manufacture parts, costs spent trying to assemble the firearm, costs to correct deficiencies therein and lost profits.

## COUNT II: UNJUST ENRICHMENT

37.

True Position restates and incorporates herein by reference the allegations contained in paragraphs 1-36 above.

38.

HMG is indebted to True Position for the reasonable value of goods and services supplied by True Position for the benefit of HMG, for which HMG, in equity and good conscience, ought to pay True Position.

39.

Absent payment by HMG to True Position for the reasonable value of goods and services supplied by True Position to HMG, HMG will be unjustly enriched

40.

True Position is entitled to recover from HMG under the doctrine of unjust enrichment.

## COUNT III: TORT OF ACTUAL FRAUD

41.

True Position restates and incorporates herein by reference the allegations contained in paragraphs 1 through 40.

42.

HMG, by and through its agent, Mac Steil, made false representations to True Position concerning the ability of the firearm to be mass manufactured using HMG's parts, plans, specifications, and the cost of acquiring additional parts needed to assemble the firearm.

43.

HMG made the foregoing false representations with the intent to deceive True Position and to persuade True Position to expend a great deal of money, time and resources to perfect the design of the firearm and to bear the cost of manufacturing parts, re-designing parts and assembling the firearm which could not be produced within the cost structure represented by HMG.

44.

True Position reasonably and justifiably relied on the foregoing misrepresentations of HMG which were known by them to be false or which were recklessly made.

45.

True Position is entitled to recover compensatory, general and punitive damages from HMG by reason of HMG's foregoing fraud.

## COUNT IV: NEGLIGENT MISREPRESENTATION

46.

True Position restates and incorporates herein by reference the allegations contained in paragraphs 1 through 45 herein.

47.

HMG negligently supplied false and inaccurate information to True Position

as an inducement to persuade True Position to expend a great deal of money, time and resources to perfect the design of the firearm and to bear the cost of manufacturing parts, re-designing parts and assembling the firearm which could not be produced within the cost structure represented by HMG.

48.

True Position reasonably relied upon the false and inaccurate information above provided by HMG.

49.

As a direct and proximate result of the false and inaccurate information provided by HMG, True Position has sustained damages in an amount to be proven at trial.

50.

True Position is entitled to recover damages from HMG for negligent misrepresentation.

## <u>COUNT V: PUNITIVE DAMAGES</u>

51.

True Position restates and incorporates herein by reference the allegations in paragraphs 1 through 50.

52.

HMG's foregoing misconduct constitutes willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to consequences, thereby entitling True Position to an award of punitive damages to be determined by the jury in accordance with O.C.G.A. § 51-12-5.1.

**COUNT VI: ATTORNEYS' FEES AND EXPENSES OF LITIGATION**

53.

True Position restates and incorporates herein by reference the allegations contained in paragraphs 1 through 52 herein.

54.

Pursuant to O.C.G.A. § 13-6-11 and other provisions of Georgia law, True Position is entitled to recover from HMG its reasonably incurred attorney's fees and expenses of litigation by reason of HMG's bad faith in the transaction and stubborn litigiousness which has caused True Position to incur unnecessary trouble and expense.

WHEREFORE, True Position prays that it be awarded a judgment against

HMG pursuant to this Counterclaim for all damages allowed by law.

This 7th day of July, 2020.

/s/ *David L. Turner*
David L. Turner
Georgia Bar No. 004530
Dean R. Fuchs
Georgia Bar No. 279170

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street
Suite 2700
Atlanta, Georgia 30303
(404) 688-6800

31

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **HILL & MAC GUNWORKS, LLC,** | |
| **Plaintiff,** | **Civil No. 1:20-cv-02447-CC** |
| **v.** | |
| **TRUE POSITION, INC.** | |
| **Defendant.** | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served Plaintiff with a copy of the above and

foregoing **Answer and Counterclaim** by CM/CEF as follows:

Steven D. Henry
Fox Rothschild LLP
999 Peachtree St., NE, Suite 1500
Atlanta, Georgia 30309

This 7th day of July, 2020.

/s/ *David L. Turner*
David L. Turner
Georgia Bar No. 004530

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street N.W.
Suite 2700
Atlanta, Georgia 30303
404-688-6800 (Telephone)

32