**Alisha Holland**

| | |
|---|---|
| **From:** | Dean Fuchs <d.fuchs@swtwlaw.com> |
| **Sent:** | Monday, December 28, 2020 2:03 PM |
| **To:** | Alisha Holland |
| **Cc:** | David Turner; John Webster; Kent, Marshall; Corser, Nicholas B.; El Hioum, Dianna G. |
| **Subject:** | Hill & Mac Gunworks, LLC v. True Position, Inc., CAFN 1:20-cv-02447-SDG / Defendant True Position, Inc.'s Statement of Position regarding a Discovery Dispute |
| **Attachments:** | Excerpts of discovery requests and responses 12-28-2020 4827-8028-4373 v.1.pdf; TP Second Interrogatories to HMG 4840-4567-6496 v.1.pdf |

<mark>CAUTION - EXTERNAL:</mark>

Ms. Holland:

This is Defendant True Position, Inc.'s ("TP") statement of its position regarding a discovery dispute with Plaintiff Hill & Mac Gunworks, LLC ("HMG").  On December 11 and 18, the parties conferred to try and resolve this dispute.  Attached are relevant excerpts of TP's discovery requests and HMG's Responses.

TP's Interrogatory #5 seeks the identities of customers who pre-paid HMG for the Firearm.   This information is relevant to HMG's breach of contract and tortious interference claims.  HMG has been accepting customer payments since 2015 but has delivered no firearms as promised.  HMG has issued many refunds, some prior to the agreement between the parties in January 2019.  HMG claims that TP is responsible for all customer refunds and for lost profits and other damages, even though HMG failed to deliver a product for years prior to TP's involvement.  HMG's customers are witnesses with relevant facts, but HMG has refused to provide all customer information and documents.

TP's Interrogatory #12 seeks the identification of "all individuals/entities with whom HMG … discussed potentially assembling or manufacturing the Firearm…".  HMG states that it worked with no such parties prior to the injunction in November 2020, and that it only assembled a "handful" of firearms in-house.  HMG refuses to provide information about third parties since the injunction.  This information is relevant to show HMG's failure to mitigate damages and to support TP's defense and counterclaim that the firearm cannot be assembled using HMG's plans.

HMG has refused to provide information sought in TP's Interrogatory #13 regarding "the costs associated with purchasing, manufacturing and assembling the Firearm, including its component parts."  The information is relevant for several reasons.  TP alleges in its counterclaim for fraud that HMG misrepresented the costs that TP would incur to assemble the Firearm.  The information is also relevant to show that the parties agreed that TP would be paid for its activity prior to calculating "royalties," under the "Exclusive License Agreement,"

notwithstanding HMG's advocacy on that issue.  If TP was only to be paid 50% of the deposits, about $900 per unit, for a product known by HMG to cost more than that to produce, then the agreement is patently unreasonable and logically inconsistent.

TP's Request for Production #17 seeks "[a]ll documents evidencing the identities of HMG customers who placed pre-orders for the Firearm."  HMG should be compelled to respond to this request on the same grounds as TP's Interrogatory #5 discussed above.  A confidentiality order is already in place.  [Doc. 49].

TP's RPD #18 seeks "[a]ll documents evidencing the amount paid by and refunded to HMG customers who placed pre-orders for the Firearm."  HMG has only provided a spreadsheet with some customer deposit information.  It has not provided check copies, for example.  HMG has refused to produce copies of its customer files and has been less than clear about what documents exist.

Finally, TP seeks leave to serve a second set of 12 Interrogatories upon HMG (attached).  HMG has completely refused to respond, though TP's First Interrogatories only number 1-21.

Regards,

*Dean R. Fuchs*
*Partner*
*Schulten Ward Turner & Weiss, LLP*
*260 Peachtree Street, N.W., Suite 2700*
*Atlanta, GA 30303*

*(404) 688-6800 main*
*(404) 688-8277 direct*
*(404) 688-6840 facsimile*
*www.swtwlaw.com*

**Mr. Fuchs is a registered mediator and arbitrator serving northern and middle  Georgia, specializing in resolving employment-related disputes, including wage and hour matters, discrimination/hostile work environment and retaliation claims, restrictive covenants, and various other forms of employment claims and disputes.  Reasonable rates - no administrative fees - conference rooms available in comfortable, downtown office setting – parking validated.**

Member, Legal Netlink Alliance www.legalnetlink.net

This email (and any attachment) is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521, and is legally privileged and confidential. If the reader of this message is not the intended recipient or the employee or agent responsible to deliver it to the intended recipient, the reader is hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by reply email or by telephone (404 688-6800) and delete the message from your computer system. Thank you in advance for your cooperation.

🖨 please consider the environment before printing this email.



**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

## EXCERPTS OF RELEVANT DISCOVERY REQUESTS FROM
## TRUE POSITION, INC. AND HMG'S RESPONSES

### TP's First Continuing Interrogatories to HMG:

5. Identify each customer who purchased or pre-paid for the Firearm from HMG, and, as to each, state the date of purchase, the amount paid by the customer, whether HMG has refunded that customer's payment, and identify all documents signed by the purchaser or provided to the purchaser in conjunction with the purchase.

**RESPONSE:** HMG objects to this Interrogatory as seeking irrelevant information that is highly sensitive in nature, and constitutes confidential information that was not ever allowed (by Agreement) to be disclosed to True Position during the time the parties operated under the subject Agreement. (See Agreement, ¶ 5.5). HMG shows that both the identity of each customer and any documents any such customer signed or was provided has no relevance to the issues in this case. Any information that could conceivably be relevant, such as the amount of any refunds paid by HMG, can be identified by customer number or purchase order number, and date of cancellation or refund, so that anonymity of the customer may be preserved. Although HMG would contemplate producing such information responsive to this Interrogatory pursuant to Fed. R. Civ. P. 33(d), HMG further objects to providing any such information without a suitable confidentiality agreement or protective order in place to protect against the unauthorized use or disclosure of such sensitive customer information. HMG anticipates that documents containing certain sensitive customer information, trade secret and/or confidential business information will be withheld pursuant to the above asserted objection.

12. Identify all individuals/entities with whom HMG, or its agents, discussed potentially assembling or manufacturing the Firearm, and for each, state whether they successfully manufactured the Firearm, how many Firearms they manufactured, and how much HMG paid them to do so.

**RESPONSE:** HMG objects to this Interrogatory as seeking irrelevant information. Subject to the forgoing objection, TP was identified and indicated its ability and interest in manufacturing the Firearm, and bargained for and was provided an exclusive license to do so. As such, no other person or entity has manufactured or assembled the Firearm besides TP or HMG.

13. Identify the costs associated with purchasing, manufacturing and assembling a Firearm, including its component parts.

**RESPONSE:** HMG objects to this Interrogatory as overbroad, unduly burdensome, calling for speculation by HMG and seeking irrelevant information. The requested information is or should be already possessed by TP, which expressly assumed responsibility for the costs inquired about pursuant to the express terms of the Agreement. (See Paragraphs 4.2).

**TP's First Request for Production of Documents to HMG:**

17. All documents evidencing the identities of HMG customers who placed pre-orders for the Firearm.

**RESPONSE:** HMG objects to this Request as seeking irrelevant information that is highly sensitive in nature, and constitutes confidential information that was not ever allowed (by Agreement) to be disclosed to True Position during the time the parties operated under the subject Agreement. (See Agreement, ¶ 5.5). HMG shows that both the identity of each customer and any documents any such customer signed or was provided has no relevance to the issues in this case. Any information that could conceivably be relevant, such as the amount of any refunds paid by HMG, can be identified by customer number or purchase order number, and date of cancellation or refund, so that anonymity of the customer may be preserved. HMG further objects to this request as calling for the disclosure of attorney work product in that it asks that HMG to disclose what it deems to be "evidence" responsive to the request. HMG further objects to providing any such information without a suitable confidentiality agreement or protective order in place to protect against the unauthorized use or disclosure of such sensitive customer information. HMG anticipates that documents containing certain sensitive customer information, trade secret and/or confidential business information will be withheld pursuant to the above asserted objection.

18. All documents evidencing the amount paid by and refunded to HMG customers who placed pre-orders for the Firearm.

**RESPONSE:** HMG objects to providing the documents responsive to this Request without a suitable confidentiality agreement or protective order in place to protect

against the unauthorized use or disclosure of such sensitive customer information. HMG further objects to this request as calling for the disclosure of attorney work product in that it asks that HMG to disclose what it deems to be "evidence" responsive to the request. HMG further objects to providing any such information without a suitable confidentiality agreement or protective order in place to protect against the unauthorized use or disclosure of such sensitive customer information. Subject to the forgoing objections, HMG will produce documents showing payments received for pre-orders of the Firearms and refunds for such pre-orders, with identifying customer information redacted. Documents responsive to this Request will be produced at a mutually convenient time and place or manner, that HMG contemplates will occur within ten (10) days from the date of this Response. HMG anticipates that documents containing certain sensitive customer information, trade secret and/or confidential business information will be withheld pursuant to the above asserted objection.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**HILL & MAC GUNWORKS, LLC,**

                **Plaintiff,**

    **v.**

**TRUE POSITION, INC.**

                **Defendant.**

**CIVIL ACTION FILE NO.
1:20-CV-02447-CC**

### DEFENDANT TRUE POSITION, INC.'S
### SECOND CONTINUING INTERROGATORIES
### TO PLAINTIFF HILL & MAC GUNWORKS, LLC

COMES NOW TRUE POSITION, INC., Defendant in the above-styled civil action, and pursuant to Fed. R. Civ. P. 33, serves these First Interrogatories upon Plaintiff who is required to respond, in writing, under oath, within the time limits imposed by Rule 33.

These Interrogatories shall be deemed continuing and require supplemental answers if you or your attorneys or anyone on your behalf obtains further information between the time answers are served and the time of trial.

In answering the following Interrogatories, you are to give full and complete answers based upon your personal knowledge as well as that of any agents,

employees, investigators or attorneys who may have obtained information on your behalf.

## NOTES

A.      For purposes of these Interrogatories, the term "**you,**" "**your**" or "**HMG**" shall mean Hill & Mac Gunworks, LLC.

B.      For purposes of these Interrogatories, the term "**document**" means every writing or record of every type and description that is or has been in your possession, control, or custody, of which you have knowledge, including but not limited to, correspondence, e-mails, text messages, memoranda, tapes, recordings, videos, stenographic or handwritten notes, studies, reports, publications, books, pamphlets, pictures, drawings, graphs, charts, photographs, computer records, or other data compilations from which information can be obtained and translated, if necessary.

C.      For purposes of these Interrogatories, the term "**identify**" means (1) to provide the name, address, telephone number, employer and job title of each individual; (2) to provide the name, principal business address, nature of judicial entity and state of organization of each entity; (3) to provide the date, author, recipient and subject matter of each document; and (4) to provide with respect to any oral communication, the time and place of making, the substance of the

communication and the identity of the makers, recipients and witnesses to the communication.

D.    For purposes of these Interrogatories, the term "**Agreement**" means the document entitled "Exclusive Licensing Agreement" between the parties dated January 22, 2019.

E.    For purposes of these Interrogatories, the term "**Firearm**" means the StG 44 rifle which is the subject of the Agreement.

## INTERROGATORIES

1.

For each item or part removed by Plaintiff from Defendant's premises, indicate the following:

(a) Part manufacturer, part number, description, cost and number obtained;

(b) Party to this case who paid for the part, or any portion thereof;

(c) Whether Defendant performed any activity to create or modify the part, and, if so, describe the scope and nature thereof;

(d) Whether Defendant performed any activity to assemble the part or integrate the part into an assembly, and, if so, describe the scope and nature thereof;

(e) Whether Plaintiff revised or redesigned the part after prints were sent to Defendant, and, if so, describe the manner and circumstances thereof including without limitation the number of revisions that Plaintiff made.

2.

State how Plaintiff expects to compensate Defendant for the following activities, indicating the amount that Plaintiff admits is owed to Defendant in each category:

(a) Defendant's purchase of Firearm parts from third parties;

(b) Defendant's manufacture or modification of Firearm parts;

(c) Defendant's manufacture or modification of Firearm parts that were unusable due to Plaintiff's redesign of such parts;

(d) Defendant's research and development activity that identified necessary modifications to Firearm parts;

(e) Defendant's assembly of Firearm parts, and;

(f) Royalty payments owed to Defendant.

3.

Identify any person or entity that Plaintiff communicated with regarding assembly of the Firearm on its behalf, and identify all communications related thereto including without limitation proposed contracts or agreements.

4.

Identify the person or entity that Plaintiff expects to complete assembly of the Firearm using any parts obtained by Plaintiff from Defendant, and identify all contracts or agreements related thereto.

5.

State whether Plaintiff ever provided Defendant with the physical magazines for the Firearm or any specifications, plans or prints related thereto, and, if so, identify all documents related thereto.

6.

State with particularity the legal and factual bases for your claim that Defendant is indebted to Plaintiff for expenses of $208,058.95, indicating whether Plaintiff currently has possession of the parts and components included in this balance.

7.

State with particularity the legal and factual bases for your claim that Defendant is indebted to Plaintiff for refunds paid of $682,440.48, indicating the following:

(a)    the identity of all persons who received a refund;

(b)    the dates when such persons made a deposit and received a refund;

(c)    all representations made by Plaintiff to such persons;

(d)    the reason such persons requested a refund;

(e)    all evidence to support any claim by Plaintiff that Defendant breached a duty to assemble the Firearm sooner, and;

8.

State with particularity the legal and factual bases for your claim that Defendant is potentially indebted to Plaintiff for refunds of $588,900.33, indicating the following:

(a)    the identity of all persons who may request a refund;

(b)    the dates when such persons made a deposit;

(c)    all representations made by Plaintiff to such persons;

(d)    all communications between Plaintiff and such persons;

(e)    all evidence to support any claim by Plaintiff that Defendant breached a duty to assemble the Firearm sooner.

9.

State with particularity the legal and factual bases for your claim that Defendant is indebted to Plaintiff for estimated lost profits of $1,080,158.06, indicating the person(s) making such calculation, all earnings data to support such calculation, also expense data used in making such calculation and any witnesses expected to testify regarding this claim.

10.

State with particularity the legal and factual bases for your claim that Defendant is indebted to Plaintiff for damage to goodwill and reputation of $300,000.00, indicating whether this is a claim for general damages, why Plaintiff

is entitled to recover such damages, how Defendant damaged Plaintiff's goodwill and reputation, the person(s) making such calculation, all data to support such calculation, and any witnesses expected to testify regarding this claim.

11.

State with particularity the legal and factual bases for your claim that Defendant is indebted to Plaintiff for compensatory damages of $493,991.20, as alleged in par. 75 of Plaintiff's Complaint, indicating the basis for this calculation, the person(s) making such calculation, all data to support such calculation, and any witnesses expected to testify regarding this claim.

12.

State whether Plaintiff has established a sales price for the Firearm, and if so, the amount thereof, when said price(s) was established, when Plaintiff informed Defendant of the price and all documents related thereto.

This 11th day of November, 2020.

*/s/ David L. Turner*
David L. Turner
Georgia Bar No. 004530
Dean R. Fuchs
Georgia Bar No. 279170

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, N.W.
Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone
d.turner@swtwlaw.com

d.fuchs@swtwlaw.com

                                        John M. Webster (admitted PHV)

BARTLETT & WEBSTER
5093 South 1500 West
Riverdale, Utah 84405
(801) 475-4506
jmwebsterlaw@hotmail.com
jmwebsterlaw@gmail.com                  Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**HILL & MAC GUNWORKS, LLC,**

        **Plaintiff,**

    v.

**TRUE POSITION, INC.**

        **Defendant.**

**CIVIL ACTION FILE NO.
1:20-CV-02447-CC**

## CERTIFICATE OF COMPLIANCE AND SERVICE

I certify that this filing complies with the font and font size requirements of LR 5.1B and that I have this date served the within and foregoing **DEFENDANT TRUE POSITION, INC.'S SECOND INTERROGATORIES TO PLAINTIFF HILL & MAC GUNWORKS, LLC** by E-Mail as follows:

| | |
|---|---|
| Steven D. Henry | Dianna El Hioum |
| G. Marshall Kent, Jr. | FOX ROTHSCHILD LLP |
| FOX ROTSHCHILD LLP | 101 Park Ave. |
| 999 Peachtree Street | 17th Floor |
| Suite 1500 | New York, NY 10178 |
| Atlanta, GA 30309 | |

This 11th day of November, 2020.

        */s/ David L. Turner*
        David L. Turner
        Georgia Bar No. 004530

SCHULTEN WARD TURNER & WEISS, LLP
260 Peachtree Street, N.W.
Suite 2700
Atlanta, GA 30303
(404) 688-6800 telephone
d.turner@swtwlaw.com                    Counsel for Defendant